# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RALPH JOSEPH ERSKINE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 14 C 2782 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, United States District Court Judge

Before the Court are Defendant Commissioner of Social Security Carolyn W. Colvin's ("Defendant") and Plaintiff Ralph Joseph Erskine's ("Plaintiff") cross-motions for summary judgment, regarding Plaintiff's appeal from the Social Security Administration's ("SSA") denial of Disability Insurance Benefits. For the following reasons, Defendant's motion is granted, and Plaintiff's motion is denied.

## I. BACKGROUND[1]

At the age of 42, Plaintiff filed for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income Benefits on April 12, 2010, alleging that he has been disabled due to bipolar disorder, major depressive disorder, anxiety, and agoraphobia. These mental impairments started in 2001 when he and his wife separated and he abruptly stopped working. Plaintiff has been receiving treatment at Aunt Martha's Community Health Centers ("AMCHC") since May 2008. As part of its investigation, the SSA requested medical records from Plaintiff's

---

[1] Unless otherwise noted, the following background facts are taken from the face of the decision currently under review by this Court.

various mental health treaters. After investigation, Plaintiff's benefit claims were denied by the SSA on July 29, 2010, and again upon reconsideration on October 14, 2010.

On his request, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on January 23, 2012. After the ALJ apprised Plaintiff of his right to be represented by an attorney, Plaintiff executed a "Waiver of Representation," where he declared that "I have decided to present my case without the assistance of a representative, and I waive the right to representation." R. 110. At the hearing, Plaintiff, his brother, and an independent vocational expert ("VE") all testified. The ALJ and the VE separately asked Plaintiff and his brother questions in an effort to develop the extent of Plaintiff's claimed disability. The VE testified about Plaintiff's ability to perform certain jobs, notwithstanding his claimed disability.

At the conclusion of the hearing, the ALJ explained to Plaintiff that:

> What's going to happen now, Mr. Erskine, Ralph, what's going to happen now is I'm going to consider what I've heard today but I'm also going to send follow up records, follow up requests for records to the various different doctors and everything else. Once I get all of that then I will be issuing a written decision[.]

R. 62–63. Later that day, the SSA sent additional letters to AMCHC locations in Harvey, Illinois and Chicago Heights, Illinois, requesting "any and all medical records from January 1, 2010 to present." R. 395, 407. AMCHC complied, and on May 10, 2010, the SSA sent Plaintiff's Record (including all medical records received by the SSA) to Ellen Rozenfeld, Psy.D ("Dr. Rozenfeld"), and requested that Dr. Rozenfeld complete a set of interrogatories pertaining to Plaintiff's claimed disabilities. On May 31, 2010, the SSA sent Dr. Rozenfeld's written findings to Plaintiff, and informed him that he had ten days to respond to Dr. Rozenfeld's findings, either in writing or by requesting "a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements

2

concerning the facts and law." R. 300. Plaintiff did not respond to the SSA's proffer letter, and the ALJ closed the record.

The ALJ issued her decision on October 24, 2012. Plaintiff subsequently retained counsel, and unsuccessfully attempted to seek review of the ALJ's decision from the Appeals Council on February 20, 2014. The Appeals Council denied his request for review on February 20, 2014, which rendered final the ALJ's decision. Plaintiff then filed this action on April 17, 2014. Presently before this Court are Plaintiff's and Defendant's cross-motions for summary judgment, challenging and defending the ALJ's decision, respectively.

## II. DISCUSSION

### A. Standard of Review.

"Judicial Review of Administrative decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." Allord v. Astrue, 631 F.3d 411, 415 (7th Cir. 2011). "When . . . an ALJ's decision constitutes the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." Id. This is a deferential standard. Eichstadt v. Astrue, 534 F.3d 663, 665 (7th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . When reviewing for substantial evidence, [courts] do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." Castile v. Astrue, 617 F.3d 923, 926 (7th Cir. 2010) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

"In rendering her decision, the ALJ must 'build a logical bridge from the evidence to [her] conclusion, but [she] need not provide a complete written evaluation of every piece of testimony and evidence.'" Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012) (quoting

3

Schmidt v. Barnhart, 395 F.3d 737, 744 (7th Cir. 2005)). The Court "will uphold a decision so long as the evidence supports it and the ALJ explains her analysis of that evidence with 'enough detail and clarity to permit meaningful appellate review." Eichstadt, 534 F.3d at 665–66 (quoting Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005)). "If an ALJ's decision contains inadequate evidentiary support or a cursory analysis of the issues, th[e] court will reverse." Luster v. Astrue, 358 F. App'x 738, 740 (7th Cir. 2010) (citing Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)). ALJs determine the witnesses' credibility; that determination of credibility is conclusive provided that the determination is based upon substantial evidence. Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996).

## B. Plaintiff's Arguments that the ALJ's Decision is Unsupported by Substantial Evidence and was Procedurally Flawed

In her decision, the ALJ applied the five-factor test to determine whether Plaintiff was disabled:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P., App. 1; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). The parties do not dispute the ALJ's findings that Plaintiff has not been engaged in substantial gainful employment since December 1, 2001, and is severely impaired by bi-polar II disorder. Rather, Plaintiff disagrees with the ALJ's findings regarding the third, fourth, and fifth factors. Plaintiff makes essentially two arguments that he believes warrant remand back to the agency. First, he argues that the ALJ improperly assigned greater weight to his medical evidence than to the lay testimony of his brother, his mother, and Plaintiff himself. Second, Plaintiff argues that the ALJ procedurally "erred in her

4

duty to an unrepresented claimant" by failing to continually supplement the record with new medical evidence—even after the ALJ rendered her decision. Id. at 7.

### *1.  The substantive errors*

Plaintiff first claims that the ALJ did not base her decision on substantial evidence when she found that his mental impairments only moderately affected his functional capacity to work. The "B criteria" are factors that the SSA uses to evaluate the extent that the claimant's impairment interferes with functional capacity to work. See 20 C.F.R. § 404, Subpt. P, app. 1 §§ 12.00(C)(1)–(4); see also Pepper v. Colvin, 712 F.3d 351, 365 (7th Cir. 2013). Material to the instant review, the SSA (and the ALJ on review) must support their evaluations with medical evidence, which includes "'pertinent symptoms, signs, and laboratory findings'". See Pepper, 712 F.3d at 365 (quoting 20 C.F.R. § 404.1520a(b)(1)). The claimant's functional capacity must be sufficiently restricted for the SSA to find him disabled. See 20 C.F.R. § 404.1520(c).

Specific to his affective disorders (i.e. bi-polar disorder, etc.), the ALJ must find that Plaintiff has at least two of the following functional restrictions to find him disabled under the third factor of the SSA's disability test: (1) "Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration." See 20 C.F.R. § 404, Subpt. P, app. 1 § 12.04(B). A limitation is "marked" when the limitation is "more than moderate but less than extreme." Id. § 12.04(C). "[E]pisodes of decompensation [are] exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning," which manifest as increased difficulties in the above three functional capacity categories. See Jelinek v. Astrue, 662 F.3d 805, 808 (7th Cir.

5

2011). Decompensation episodes are "repeated" if they occur three times or more within one year, with each episode lasting for at least two weeks.

If the ALJ does not find that the claimant can satisfy the third factor of the disability test, she continues her analysis under the fourth and fifth factors to determine whether the claimant has any residual functional capacity ("RFC") with which to work. See Pepper, 712 F.3d at 362; 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity ("RFC") refers to the claimant's work capacity, after accounting for pain or other symptoms caused by the claimed mental impairment, which limits the claimant's ability to work. 20 C.F.R. § 404.1545(a)(1); see also Moon v. Colvin, 763 F.3d 718, 720 (7th Cir. 2014).

Plaintiff does not dispute that the medical evidence itself is supported by substantial evidence. Instead, Plaintiff argues that the ALJ improperly found that he was not disabled and still possessed some residual functional capacity because she did not assign enough weight to the testimonial and written evidence of Plaintiff, his brother, and their mother.

Starting with his activities of daily living, the ALJ found that, while he rarely washes or leaves the couch upon which he sleeps, Plaintiff sometimes prepares simple meals, and does bathe, shave, and launder his clothes occasionally. The ALJ discussed Plaintiff's report "that he never has clean clothes; does not bathe; uses the toilet once every two (2) days; and shaves once a month," however she discounted this report substantially because it was inconsistent with his mother's testimony "that [Plaintiff] prepares simple meals sometimes including sandwiches and frozen dinners." R. 24. When reviewing his hygiene, the ALJ noted additional inconsistencies between the accounts of Plaintiff and his family and his medical records. While his brother and mother reported that for one to three weeks at a time, Plaintiff will refuse to shower or leave the couch upon which he sleeps, his medical records documented Plaintiff's self-maintenance of "his

personal care and good hygiene." R. 24. Specifically, the ALJ found that when he presented for a psychological evaluation on June 10, 2010, "the claimant reported that he had bathed, changed his clothes, and brushed his hair independently and on a somewhat daily basis." Id. Looking at all of the evidence before her, the ALJ concluded that his activities-of-daily-living restriction was "moderate."

Moving on to his social-functioning restriction, the ALJ found that Plaintiff "is able to interact independently, appropriately, effectively, and on a sustained basis with other individuals." Id. When the SSA interviewed Plaintiff on April 12, 2010, the field officer documented that Plaintiff was "cooperative and sociable." R. 24. At his June 10, 2010 psychological evaluation, Plaintiff reported that he had "no friends, seldom socialized and did not attend church." R. 24. The ALJ found his report inconsistent with the objective evaluation from that day, which recorded that "he was not withdrawn during the examination [and] maintained good eye contact" in a cooperative manner. R. 24. The ALJ found further that Plaintiff calls people on the phone, visits his siblings, and even attended his Aunt's funeral without incident the day before the hearing. After weighing all of the evidence in the record, and discounting inconsistencies, the ALJ found that Plaintiff's social-functioning restriction was moderate, and found that his RFC allows him to engage in "incidental and superficial contact with the general public and occasional interaction with supervisors and co-workers." R. 24.

The ALJ next discussed Plaintiff's concentration, persistence, and pace of behavior. Disregarding his mother's conclusions that his depression adversely affects Plaintiff's memory, the ALJ found that no disinterested observers of Plaintiff's affect noted the presence of any cognitive difficulties in Plaintiff, including interviewers at the SSA that observed Plaintiff while he initially filed for disability benefits, who noted that Plaintiff "was cooperative and sociable[,

7

and] was dressed properly for the season." R. 154. At the hearing, Plaintiff testified that he enjoys listening to music in his room and could remember that he had pizza the day before at his aunt's funeral. At a mental status examination on September 21, 2006, Plaintiff could repeat nine digits forward and six digits backward, and at his June 10, 2010 evaluation, Plaintiff was able to repeat six digits forward and three backwards, remember three out of three items at the end of five minutes, and could perform calculations.

As with the other functional capacity categories, the ALJ discounted the accounts of Plaintiff and his family in favor of the objective medical evidence. After reviewing all of the evidence in the record, the ALJ found that Plaintiff's concentration, persistence, and pace restrictions were mild, and found that his RFC allows him to engage in "unskilled work tasks that can be learned by either demonstration or within 30 days or less that involve occasional decision making with occasional changes in the work setting; and that are not fast paced or have strict production quotas." R. 24.

Plaintiff correctly points out that while the ALJ noted "one or two episodes" of decompensation, she did not explain the substance of the episodes—that is, what occurred during the episode and when the episode occurred. But even assuming *arguendo* that the ALJ's finding is this regard is deficient, the SSA disability regulations require the presence of at least one "marked" limitation to combine with the decompensation episodes to support a finding of disability. See 20 C.F.R. § 404, Subpt. P, app. 1 § 12.04(B). As the ALJ did not find Plaintiff's limitations rose to the level of "marked" restriction, the fact that she did not explain the decompensation-episodes finding further does not warrant a remand back to the SSA.

After noting that the objective medical evidence did not corroborate with statements of Plaintiff and his family regarding his functional limitations, the ALJ made a separate finding

8

relating to the credibility of Plaintiff and his family. First, the ALJ discussed in depth the lay accounts of Plaintiff and his family. Although the ALJ found that his claimed functional limitations could exist with his mental impairments, she found that there was no evidence—other than the accounts of Plaintiff's and his family—that would demonstrate functional limitations sufficient to find Plaintiff disabled. Specific to this point, the ALJ found that:

> claimant's symptoms and complaints are not supported by objective findings. Absent such objective findings, the claimant's testimony, his brother's testimony and prior allegations are not enough to support a finding of total disability. Moreover, but for his subjective complaints, the record is not at all consistent a [*sic*] with finding of total disability."

R. 29. In sum, the ALJ found that his activities-of-daily-living restriction was "moderate," his social functioning restriction was "moderate," and his concentration, persistence or pace was "mild." R. 24. The ALJ based these findings on the opinion of Dr. Rozenfeld, Plaintiff's medical records from April 21, 2008 to January 27, 2012, and testimony and written submissions from Plaintiff, his brother, and their mother. The ALJ noted that all of the objective evidence in the record supported the finding of moderate or mild functional capacity restrictions. The ALJ further explained her analysis with enough detail and clarity to permit meaningful judicial review. Accordingly, the Court finds that the ALJ created a logical bridge between the evidence and her findings, and accordingly has supported her decision with substantial evidence. The Court will not disturb her determination that Plaintiff is not disabled.

### 2. *Plaintiff's claimed procedural errors*

Plaintiff also claims that the ALJ did not consider his entire medical history before the ALJ rendered her decision.[2] An ALJ has a duty to develop a full and fair record. Nelms v.

---

[2] Plaintiff also asks for a remand under the sixth sentence of 42 U.S.C. § 405(g) for the SSA to hear new material evidence. But only the SSA can ask for a remand under that particular statute. See 42 U.S.C. § 405(g) ("The court may, on *motion of the Commissioner of Social Security* . . . remand the case to the Commission of Social Security for further action . . . and it may at any time order additional evidence to

9

Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009). When a claimant is unrepresented and suffers from mental impairment, the ALJ must develop the record by "asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." Id. But this duty to develop is not absolute; the applicable regulations require only "reasonable effort[s]" to develop the record. See 20 C.F.R. § 416.912(d). This reasonable-effort requirement is borne from the reality that the development of a "complete" record is impossible—"one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." See Kendrick v. Shalala, 998 F.2d 455, 456–57 (7th Cir. 1993). Ultimately, the Court defers to the Commissioner on how much evidence to gather, even for unrepresented claimants. See Nelms, 553 F.3d at 1098 (remanding back to the SSA where two-year medical evidentiary gap existed in the record) (citing Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994)).

Plaintiff contends that the ALJ failed "in her duty to an unrepresented claimant," specifically by failing to consider fifteen additional psychiatric evaluations by AMCHC from November 18, 2011 until December 20, 2012. Pl.'s Mem. 8. The record, however, shows that of the fifteen, the three evaluations that had occurred when the SSA made its records request *were* received by the ALJ. Compare R. 402–04 with 463–65. Moreover, three records were made *after* the ALJ issued her decision on October 24, 2012. While the remaining nine evaluations took place in the interim between the hearing and the decision, the ALJ has no affirmative duty to continually obtain Plaintiff's new medical records as they are generated. When the ALJ sent Plaintiff notice on May 31, 2012 that she had completed her investigation and would issue a

---

be taken[,] . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . .") (emphasis added.) As the Plaintiff—not the SSA—brings the motion to remand, the Court declines to discuss the motion's further merits.

10

decision unless Plaintiff responded within ten days, Plaintiff failed to bring these interim medical records to her attention. Accordingly, the Court finds that the ALJ satisfactorily developed Plaintiff's medical history before issuing her decision.

### III. CONCLUSION

In conclusion, in finding that Plaintiff failed to meet his B criteria and possessed some residual functional capacity to work, the Court finds that the ALJ based her decision upon substantial evidence in the record as a whole, and otherwise satisfied her duties as an ALJ. Accordingly, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

*Charles R Norgle*
_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: May 8, 2015